**UNITED STATES of America,
Appellee,**

**v.**

**Edward REED, Defendant-Appellant.**

**No. 599, Docket 34872.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1971.

Decided March 3, 1971.

See also D.C., 313 F.Supp. 451.

George A. Johnson, New Haven,
Conn., for defendant-appellant.

F. Mac Buckley, Asst. U. S. Atty., District of Connecticut (Stewart H. Jones, U. S. Atty., District of Connecticut, on the brief), for appellee.

Before MEDINA, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Edward W. Reed appeals from a judgment of conviction, on a jury verdict of guilty, in the District of Connecticut for the robbery of the Fairfield County Trust Company, South Norwalk Branch, on January 9, 1969.[1] He contends that certain exemplars of his handwriting were admitted in evidence without proper authentication and that the trial judge improperly disallowed a question asked of the Government's chief witness. For the reasons hereinafter stated, the judgment is affirmed.

The Government's chief witness at the trial was Ralph Maselli, a co-conspirator, who testified that at an October 1968 meeting in the home of Arthur Murgo, another co-conspirator, he and Murgo, the appellant Edward Reed, the appellant's brother, John Reed, and Edmund Devlin agreed to a five way split of all proceeds from future bank robberies in which any of the five participated. Over a period of several months, Maselli, Murgo, appellant and John Reed "cased" the Fairfield County Trust Company and planned to rob it on January 9, 1969. On the evening of January 8, Murgo, Maselli, appellant and Devlin met at the West Haven Motor Inn and rented two rooms. The appellant registered for one of the rooms under the name of "Casey." The next morning the four men left the motel in separate automobiles and "dropped" these cars along the escape route as well as two more cars stolen during that morning. Murgo met John Reed in New Haven at Lindy's Luncheonette, a coffee shop frequented by federal agents and prosecutors, where they remained during the robbery to establish an alibi. Appellant,

Devlin and Maselli, in another stolen car, went to the bank which they entered, wearing masks, and at gunpoint made off with $106,000 in cash. The men then followed their escape route, picking up the various cars that had been dropped for their use. Later the same day Murgo, John Reed and Maselli met the appellant at a room in the Waterbury Motor Inn for which he had registered under the name of "Casey," and there they divided the proceeds from the robbery.

On cross-examination, defense counsel established that Maselli had agreed to testify on behalf of the Government in exchange for receiving complete immunity on ten federal charges and that he expected consideration on a number of pending state charges. The cross-examination of Maselli occupies approximately two hundred pages of transcript during which counsel meticulously examined Maselli's motives for testifying and challenged his credibility. One item about which counsel sought to question Maselli was whether he intended to write a book about his experiences as a bank robber. The court sustained an objection to the question, and the appellant contends that this was reversible error.

In an effort to corroborate Maselli's testimony, the Government produced, through the desk clerk at the West Haven Motor Inn, a registration card for January 8, 1969, signed by "Ralph Casey," on which the registrant listed his address as 211 Park Street, New London, Connecticut, his business as "Superior Concrete Products" and his car as a Chevrolet with a Connecticut license number 624–529. The desk clerk could not identify appellant at the trial as the man who signed the registration card. Through the manager of the Waterbury Motor Inn, the Government introduced a registration card for January 9, 1969, signed "Paul Casey," which listed the same address, business and model of car as the card from the West Haven Motor

1. Edmund J. Devlin was named in the indictment as a co-defendant and Ralph Maselli and Arthur Murgo were named as co-conspirators.

Inn, but the manager could not identify appellant at the trial as the man who signed the card.

Laying the groundwork for expert testimony as to the handwriting on these two registration cards, the Government put in evidence, through Frank DiLito, the manager of the Park Plaza Hotel in New Haven, room registration cards for November 20 and 21, 1968, both of which were signed "Paul Casey" and recited a business identical to that stated on the other two cards, though the address was 111 Park Street, Bridgeport. While DiLito could not identify the appellant at the trial as the one who signed the cards, he testified without objection that at the time of the registration, he thought that the man signing the card was one of the Reed brothers. DiLito had formerly been an officer on the New Haven police force and had arrested Edward Reed in 1959. In addition to these two exemplars, the Government produced a W–4 withholding tax form which the appellant had signed in 1968 when he had worked for L. G. Felice, Inc., a construction firm.

As its handwriting expert, the Government called Special FBI Agent Carl Lilja, who compared the handwriting on the West Haven Motor Inn and Waterbury Motor Inn registration cards with the exemplars from the Park Plaza Hotel and the W–4 Form and testified they were all written by the same hand.[2] The appellant claims that the exemplars from the Park Plaza Hotel were not properly authenticated as coming from his hand and that the testimony of the expert was consequently improperly admitted.

■ Neither ground urged by the appellant, however, provides a basis for reversal. The authenticity of the Park Plaza Hotel registration cards could be shown either by direct or circumstantial evidence or by a combination of both. United States v. Swan, 396 F.2d 883 (2 Cir. 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1969). On this record, the evidence was clearly sufficient to support the district court's admission of the exemplars to provide a basis for comparison with the registration cards from the West Haven and Waterbury Motor Inns. 28 U.S.C. § 1731. Maselli testified that the appellant had used the name "Casey" in registering at the West Haven Motor Inn on January 8 and at the Waterbury Motor Inn on January 9, and that the appellant had told him he would be registered under that name. This was corroborated by the testimony of co-conspirator Murgo. The striking similarity of the contents of the Park Plaza registration cards and the other two cards gives rise to a strong inference that appellant had prepared all four. Furthermore, the testimony of the manager of the Park Plaza Hotel, made without objection, that he thought the man who registered as "Paul Casey" was one of the Reed brothers, supports the inference that "Paul Casey" was, in fact, the appellant because, as a former police officer, DiLito had arrested Edward Reed in 1959. This combination of direct and circumstantial evidence fairly supports the authenticity of the exemplars and the court's admission of them into evidence. United States v. Swan, *supra*; Citizens' Bank & Trust Co. v. Allen, 43 F.2d 549 (4 Cir. 1930).

■ Appellant's claim that it was error not to allow him to cross-examine Maselli as to the latter's intention to publish a book about his escapades as a bank robber is equally without merit.

---

**2.** Although Lilja was able to say that the West Haven Motor Inn, Waterbury Motor Inn and the November 20 Park Plaza Hotel cards were prepared by the same person, he could only say that the November 21 Park Plaza card and the W–4 Form were probably prepared by the same person as prepared the other three. The writing and printing on the W–4 Form did not contain enough of the letters used on the other examples to permit the expert to reach a positive conclusion and the writing on the November 21 Park Plaza card showed some differences, but they were outweighed by the similarities.

**4**

At most this was harmless error, because Maselli's credibility had been challenged thoroughly and his motives for testifying clearly established. It is our opinion, however, that under the circumstances, the district court's ruling was not error at all. Cf. United States v. Reed and White, 437 F.2d 57 (2 Cir. 1971). Although it is proper to question a witness concerning his financial interest in the outcome of the case, Wheller v. United States, 351 F.2d 946 (1 Cir. 1965), the question asked by counsel was not relevant to that issue. The offer of proof shows that, at best, Maselli's intentions about writing such a book were nothing more than pipedreams; and even if they had some substance, the question of whether his financial interests would be better served by a conviction rather than by an acquittal is pure speculation.

The judgment of the district court is affirmed.