No. 81-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

CITY OF MISSOULA,

Plaintiff and Respondent,

vs.

DORIS M. SHEA,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable John Henson, Judge presiding

Counsel of Record:

For Appellant:

M. G. McLatchy argued, Helena, Montana

For Respondent:

Jim Nugent, City Attorney, argued, Missoula, Montana

---

Submitted: March 1, 1982

Decided: February 1, 1983

FEB 1 - 1983

Filed:

Clerk

Honorable B. W. Thomas, district judge, delivered the Opinion of the Court.

Defendant was charged in Missoula Municipal Court with sixty parking ordinance violations dating from June 1, 1976, to April 22, 1978. Seventeen of the charges were dismissed because they were filed after the one-year statute of limitations had expired. All but two of the charges were under sections 20-132(c) (now section 10-24-030) and 20-184 (now section 10-54-070), Missoula Municipal Code (parking meter violations). The remaining charges were under sections 20-115 (now section 10-22-040) and 20-118 (now section 10-22-220), M.M.C. (non-parking meter violations). After her conviction in Municipal Court, defendant appealed to district court. The district court upheld her conviction.

The case was submitted on the following stipulated facts:

(1) That the defendant is the registered owner of both vehicles involved in this case and that she was the registered owner at all times pertinent to any proceedings herein;

(2) That the meter maids or law officers involved, affixed a notice of violation to the vehicles involved on the dates, times and locations alleged in the notices of violation, which notices are attached to the complaints and incorporated by reference; that all alleged violations occurred within the city limits of the City of Missoula;

(3) That at each of the times such notices of violation were affixed to the vehicles involved, the vehicles were either parked next to a parking meter with a red flag showing violation or that the vehicles were otherwise parked in violation of the city ordinances as alleged in the notices of violation;

(4) That the foregoing stipulated facts are not inclusive to this case, but the same shall be submitted to the court without jury, on which the court may render its verdict and judgment;

(5) That these stipulated facts are for the purposes of trial;

(6) That it is agreed by the parties that the court shall render its decision upon the foregoing stipulated facts and defendant's plea of "not guilty".

Defendant raises the following issues:

1. Are the Missoula parking ordinances constitutionally infirm?

2. Are the escalating fine provisions of the Missoula ordinances valid?

3. May a defendant appealing from a municipal court in a traffic case be required to post an appeal bond?

Although there were two charges brought under Missoula Municipal Code sections 20-115 and 20-118, the majority of charges were brought under sections 20-132(c) and 20-184, M.M.C. This opinion applies to all the ordinances. They read as follows:

> "Sec.20-115. Marking no parking zones. Whenever curbs or curbing are painted yellow in color by the city engineer pursuant to an ordinance or resolution of the city council, no person shall at any time stop, stand or park; or whenever signs are erected by the city engineer pursuant to an ordinance or resolution of the city council which prohibits parking, establish limited time parking zones or in any way limit or restrict parking, no person shall stop, stand or park in violation of the provisions indicated on such signs."

> "Sec. 20-118. Registered owner to be responsible for illegally parked vehicle. Every person in whose name a vehicle is registered or licensed shall be responsible for any parking of the vehicle in violation of this division. It shall be no defense to such charge that the vehicle is illegally parked by another unless it is shown that at such time the vehicle was being used without the consent of the registered owner thereof."

> "Sec. 20-132. Extension of time beyond the legal limit; parking after expiration of time.

"(a) No person shall deposit or cause to be deposited in a parking meter a coin for the purpose of increasing or extending the parking time for any vehicle beyond the legal maximum parking time which has been established for the parking space adjacent to which the parking meter is placed.

"(b) No person shall permit a vehicle to remain or be placed in any parking space adjacent to any parking meter while the parking meter is indicating a signal indicating violation.

"(c) No person shall cause, allow, permit or suffer any vehicle registered in his name or operated or controlled by him to be upon any street within the parking meter zone in any space adjacent to which a parking meter is installed, at any time during which the meter is showing a signal indicating that such space is illegally in use, other than such time as is necessary to operate the meter to show legal parking, between the hours of 9:00 a.m. and 6:00 p.m. of any day, Sundays and legal holidays excepted."

"Sec.20-184. Presumption in reference to illegal parking. (a) In any prosecution charging a violation of any law or regulation governing the standing or parking of a vehicle, proof that the particular vehicle described in the complaint was parked in violation of any such law or regulation, together with proof that the defendant named in the complaint was at the time of such parking the registered owner of the vehicle, shall constitute in evidence a prima facie presumption that the registered owner of such vehicle was the person who parked or placed such vehicle where, and for the time during which, such violation occurred.

(b) The foregoing stated presumption shall apply only when the procedure indicated in sections 20-182 and 20-183 has been followed."

The second sentence of section 20-118, M.M.C. was eliminated by the city council on July 10, 1978, because of this Court's decision in the case of State v. Jetty (1978), 176 Mont. 519, 579 P.2d 1228.

The District Court found that the presumption provided for by section 20-184(a), M.M.C. was unconstitutional in that it resulted in an impermissible shifting of the burden of persuasion under the holding in Sandstrom v. State of Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. The District Court further found that the remaining provisions of the ordinances established a prima facie responsibility upon the registered owner, which that owner had a right to

-4-

rebut by way of an affirmative defense, following the decision in Jetty. The defendant did not offer any evidence in rebuttal in district court to show that she was not the person who parked the car.

Defendant contends that a prima facie case that the registered owner parked the vehicle is no different than a presumption that the registered owner parked the car. She makes three arguments in support of her contention: (1) the presumption shifts the burden of persuasion to the defendant, thus violating the due process requirement that the state prove each element of a criminal offense beyond a reasonable doubt; (2) the presumption is not based on a sufficient constitutional nexus between the fact presumed and the fact proved; and (3) the presumption presumes guilt itself, when it should only presume one of the several elements of the crime.

To accept defendant's arguments would require that we reverse or modify the position taken by this court in State v. Jetty (supra).

In Jetty, this Court had under consideration a City of Livingston parking ordinance. The opinion stated:

> "Defendant's second issue on appeal becomes academic due to this Court's holding on the first issue. However, because of the wide use of this traffic ordinance throughout the state, we feel it necessary to comment on its constitutionality.
>
> "The Livingston city code, Section 28-264, provides:
>
> '(a) Every person in whose name a vehicle is registered (licensed) shall be responsible for any parking of such vehicle in violation of this division.
>
> '(b) It shall be no defense to such charge that such vehicle was illegally parked by another, unless it is shown that at such time the vehicle was being used without the consent of the registered (licensed) owner thereof.'
>
> "The Livingston ordinance is identical to a Seattle, Washington, ordinance which was declared unconstitutional in part by the Washington Supreme Court in City of Seattle v. Stone (1966), 67 Wash.2d 886, 410 P.2d 583.

"We cite City of Seattle v. Stone, supra, with approval and adopt the following rationale:

'The second sentence of the Seattle ordinance [section 28-264(b), Livingston ordinance] preceding the proviso is patently incompatible with the concept of due process. It purports to make a defendant responsible even though he in fact might not have been responsible for the parking violation.

'For the reasons indicated, we are forced to strike down as unconstitutional that portion of the second sentence of § 21.66.180 [Livingston ordinance subsection (b)] preceding the proviso, for it deprives an automobile owner of due process of law.

'We then interpret the remainder of §21.66.180 [Livingston ordinance 28-264, subsection (a)], as do the authorities heretofore cited, to establish only a prima facie responsibility upon the registered owner, which he has the right to rebut, if he can. This in nowise interrupts the city's exercise of its police power or its right and power to enforce its parking ordinances.' (Emphasis added.) 410 P.2d 585. [Bracketed material added.]

"As pointed out, the owner is still prima facie liable under the ordinance and subject to arrest and prosecution. However, he cannot be deprived of his defense that some one else he permitted to use his car was the actual violator." 176 Mont. at 523, 524, 579 P.2d at 1230-1231.

As the above quotation shows, in Jetty this Court adopted the reasoning of the Washington court in the case of City of Seattle v. Stone, supra, including its holding that a city parking ordinance can make the registered owner prima facie liable so long as he is not deprived of the defense that he was not the actual violator.

We agree with the defendant that to make the owner of a vehicle prima facie liable upon proof that his vehicle has been parked illegally is equivalent to a presumption that the owner parked the vehicle. This requires us to consider whether that presumption, in the light of its effect, meets the constitutional requirements for the use of presumptions in criminal cases.

Since its decision in Seattle v. Stone, supra, the Washington Supreme Court has developed a strict three-part test of the constitutionality of criminal presumptions: (1)

although a presumption may shift the initial burden of producing evidence to the defendant, it may not operate to relieve the prosecution of its burden of persuasion on that element by proof beyond a reasonable doubt; (2) the facts presumed must follow from the facts proven beyond a reasonable doubt, and (3) the trier of fact must know that the presumption allows, but does not require, it to infer the presumed fact from proof of the operative fact. State v. Roberts (1977), 88 Wash.2d 337, 562 P.2d 1259. Based on those requirements, the Washington Court of Appeals in City of Spokane v. Potter, Opinion No. 3699, September 23, 1980, found that a presumption similar to the one we are dealing with here, appearing in a Spokane parking ordinance, was unconstitutional, relying on Roberts as prevailing over Seattle v. Stone, supra. Although these Washington decisions are not binding on us, they indicate an erosion of the foundation for the Jetty holding.

Decisions of the United States Supreme Court on due process questions are binding on us. The requirements or principles set forth in Roberts stem from United States Supreme Court rulings expressed in such cases as In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 and Sandstrom v. Montana, supra. However, the United States Supreme Court has not gone so far as to require that the nexus between the fact proved and the fact presumed must be established beyond a reasonable doubt. Instead, that Court has said that there must at least be "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States (1969), 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82.

Under the rule in Jetty, the City need only prove the act of parking and the registered ownership of the vehicle

-7-

to make a prima facie case of guilt.  The burden then shifts to the owner to establish that she was not the driver.   The act of illegal parking becomes an essential element of the offense, which the City is permitted to prove by means of the presumption.  Rule 301(b)(2), Mont. R. Evid., states that a disputable presumption "may be overcome by a preponderance of evidence contrary to the presumption.  Unless the presumption is overcome, the trier of fact must find the assumed fact in accordance with the presumption."  Thus, the trier of fact is not free to accept or reject the presumption. The effect of the presumption is to violate constitutional due process requirements by shifting the burden of persuasion to defendant and contradicting the presumption of innocence.

We therefore come to the conclusion that the prima facie presumption is unconstitutional and invalid.  The ruling in _Jetty_ relative to the validity of the portion of the above-quoted Livingston ordinance and the prima facie responsibility of the registered owner was given for the express purpose of providing future guidance to cities.  The ruling was not necessary to the decision in that case.  It cannot stand.

We have also reached the conclusion that we should reconsider the holding in _Jetty_ which struck from the Livingston ordinance, on due process grounds, the following provision:

> "It shall be no defense to such charge that such vehicle was illegally parked by another, unless it is shown that at such time the vehicle was being used without the consent of the registered (licensed) owner thereof."  Livingston City Code, section 28-264(b).

That provision made the registered owner vicariously liable for the illegal parking of a vehicle by one who was driving with the permission of the owner.  Under such a provision, no presumption is involved in determining the liability of the owner.  The offense constitutes only two

-8-

elements, the registered ownership and the illegal parking. There is absolute liability on the part of the registered owner upon proof of those two elements.

"While as a general rule, one person is not liable for the criminal acts of another in which he did not participate either directly or indirectly, there is a class of cases which form an exception to such general rule; [those] cases relat[e] to criminal responsibility for the maintenance of a public nuisance and for the violation of revenue and police regulations by one's agent or servant." State v. Erlandson (1952), 126 Mont. 316, 249 P.2d 794. This principle has been applied to traffic regulations. Commonwealth v. Ober (1934), 286 Mass. 25, 189 N.E. 601, City of Chicago v. Crane (1943), 319 Ill.App. 623, 49 N.E.2d 802; City of Chicago v. Hertz Commercial Leasing Corp. (1978),71 Ill.2d 333, 375 N.E.2d 1285.

Montana statutes contemplate the imposition of vicarious liability in certain criminal offenses. Section 45-2-301, MCA, provides: "Accountability for conduct of another. A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both."

Section 45-2-302, MCA, provides: "When accountability exists. A person is legally accountable for the conduct of another when:. . .(2) The statute defining the offense makes him so accountable;"

The Commission Comment for this subsection states:

"Subsection (2) makes clear a person may be held legally accountable in circumstances not otherwise included in section 94-2-107 [R.C.M. 1947, now 45-2-302,MCA], where the particular statute so provides. . . An example of such a statute might be one imposing vicarious criminal liability on a tavern owner for the act of an employee resulting in sale of liquor to a minor."

We hold that vicarious criminal responsibility can be imposed, without breaching due process restrictions, in the regulation of traffic and the parking of motor vehicles. Jetty is overruled insofar as it holds to the contrary.

In addition to the statutes quoted above, section 45-2-104, MCA, is pertinent here. That section reads as follows:

> "Absolute liability. A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in subsections (33), (37), and (58) of 45-2-101 only if the offense is punishable by a fine not exceeding $500 and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

The next question which we must consider is whether a city has authority to adopt a vicarious liability parking ordinance. We hold that it does have that authority. Section 7-5-4101, MCA, reads as follows:

> "General powers of municipal council. The city or town council has power to make and pass all by-laws, ordinances, orders, and resolutions not repugnant to the constitution of the United States or of the state of Montana or to the provisions of this title, necessary for the government or management of the affairs of a city or town, for the execution of the powers vested in the body corporate, and for the carrying into effect the provisions of this title."

Section 61-12-101(1), MCA provides that a city may within the reasonable exercise of its police power, regulate the standing and parking of vehicles.

We find nothing repugnant to the United States or Montana constitutions in a vicarious liability parking ordinance. We find such an ordinance to be within the reasonable exercise of police power, if it conforms with the requirements of Section 45-2-104, MCA, that the offense be punishable by a fine not exceeding $500 and that the ordinance defining the offense clearly indicates a legislative purpose to impose absolute liability arising from the ownership of the vehicle.

The Missoula ordinances provide a minimum fine of $1.00

-10-

for parking meter violations if appearance or payment is made at the police station within fourteen days; otherwise, two dollars. For other parking violations, the minimum fine is $4.00 if appearance is made at the police station within three days; otherwise, $8.00. For both kinds of violations, the minimum fine is $10.00 if a warrant for arrest is issued. It appears that the maximum penalty is ninety days in jail and a $300.00 fine. Missoula Municipal Code, Section 20-2; section 7-5-109, MCA.

The Missoula ordinances prior to July 10, 1978, clearly indicated a legislative purpose to impose absolute liability on the registered owner of a motor vehicle for parking violations. However, since the maximum penalty to which the owner is subject under those ordinances exceeds the maximum allowed by section 45-2-104, MCA, those ordinances cannot be accepted as valid instruments for the imposition of vicarious liability. Because of that determination and our holding above that the defendant cannot be held prima facie responsible under a presumption that she was the one who illegally parked a vehicle registered in her name, the judgment below must be reversed.

The prevalence of similar ordinances throughout Montana makes it imperative we address the remaining issues: (1) the validity of escalating fines, and (2) the necessity of filing an appeal bond.

Escalating fines

The relevant Missoula parking meter ordinances were discussed above. The municipal court declared unconstitutional the $10.00 fine assessable upon the issuance of an arrest warrant, and the city has not appealed from that decision. The district court left undisturbed the penalty imposed by the municipal court. The pertinent issue raised in defendant's appeal is the validity of those provisions of the ordinances which increase the fine for failure to make payment or an appearance within the time limits stated.

-11-

In our view, those provisions are in violation of the basic principle of criminal law that punishment must be for the violation itself and must be proportional to the gravity of the offense. They are designed not to punish for the offense, but to encourage early payment of the fine. While such a scheme may be acceptable in enforcing civil penalties, we hold that the escalating fine provisions of the Missoula ordinances violate Article II, Section 28 of the Montana Constitution, which provides that laws for the punishment of crime shall be founded on principles of prevention and reformation.

Appeal Bond

The case of State v. Bush (1974), 164 Mont. 81, 518 P.2d 1406, interprets section 46-17-311, MCA, as requiring that a bond be furnished in order to perfect an appeal in a criminal case from a city or justice court to the district court. We cannot reason from the holding of that case that appeal bonds are necessary when appeals are taken from municipal courts, since those courts are governed by different statutes than those which apply to justice and city courts. In particular, section 3-6-104, MCA, provides that a municipal court shall establish rules for appeals to the district court, subject to the Supreme Court's rule-making and supervisory authority. Nothing in the record here shows that the municipal court of Missoula has adopted rules governing appeals, or that any such rules have been approved by the Supreme Court.

Proceedings and practice in municipal court are required by section 46-17-401, MCA, to be the same as in district court, except as provided by Title 3, Chapter 6, and Part 4 of Title 46, Chapter 17, MCA. Examination of those parts of the Code reveals no reference to appeals from municipal court except those contained in section 3-6-104, MCA mentioned

-12-

above. Practice in district court does not require the filing of a bond to perfect an appeal in a criminal case.

Since there is no showing that an appeal bond requirement is contained in properly approved rules of the municipal court, and there is no requirement for a appeal bond in district court practice, we conclude that the municipal court here could not require that a bond be filed before the appeal to the district court was perfected. We distinguish the furnishing of an appeal bond from the furnishing of a bail bond on appeal, which can be required under section 46-9-103, MCA.

We reverse the decision of the district court. The complaints against appellant are dismissed.

_____
Honorable B.W. Thomas, District
Judge, sitting in place of Mr.
John C. Harrison

We concur:

_____
_____
_____
_____
Justices

_____
Honorable John M. McCarvel, District
Judge, sitting in place of Mr. Chief
Justice Frank I. Haswell

_____
Honorable Joseph B. Gary, District
Judge, sitting in place of Mr.
Justice Daniel J. Shea

-13-

THE CITY OF MISSOULA,      )
                          )
            Plaintiff,    )
                          )
        vs.               )          No.   81-364
                          )
DORIS M. SHEA,            )
                          )
            Defendant.    )

## DISSENT

I would affirm the decision of the trial court for the following reasons. First of all, I agree with the statement of facts of the majority opinion and I do not feel that it is necessary to overrule State v. Jetty, 176 Mont. 519, 579 P.2d 1228, as apparently is done by the majority opinion.

As is shown in the majority opinion and by the trial court's opinion that following State v. Jetty, supra, the Missoula City Commission struck out the conclusive presumption of Section 20-118 as being unconstitutional in that it deprived the automobile owner of due process of law. Therefore, following Jetty the remainder of Section 20-118 merely established a prima facie responsibility of the registered owner which he had the right to rebut if he could. In like manner, Section 20-184 merely provides that there is a prima facie presumption that the registered owner of such vehicle was the person who parked or placed such vehicle illegally and for the time such violation occurred. This, then in the light of State v. Jetty, supra, permits the owner of the vehicle to come forward if he so desires to overcome the prima facie case and certainly is not an unconstitutional shifting of the burden of proof in a parking case for two reasons. First, this is a malum prohibitum offense and secondly, the legislature has authorized the establishment of absolute liability in such matters which has been upheld by this court. See Section 45-2-302(2), MCA. This will be discussed at a later time.

-14-

The effect of the majority's decision is to strike from the ordinances as unconstitutional, that portion of the ordinance which established a prima facie presumption that the registered owner of the vehicle was the person who parked the vehicle. The effect of this is to place the municipalities in the State of Montana in a complete state of disarray and is inconsistent with what the majority of the courts are doing in the United States. In State v. Jetty, supra, the court declared and interpreted the remainder of the parking regulations of Livingston establishing a prima facie responsibility upon the registered owner, which he or she had the right to rebut if he or she could. State v. Jetty, supra, followed the original decision of the City of Seattle v. Stone, 67 Wash.2d 886, 410 P.2d 583, and said on page 1230 and 1231 as follows:

> "We cite City of Seattle v. Stone, supra,
> with approval and adopt the following rationale:
>
> "The second sentence of the Seattle
> ordinance (section 28-264(b), Livingston
> ordinance) preceding the proviso is pat-
> ently incompatible with the concept of
> due process. It purports to make a
> defendant responsible even though he in
> fact might not have been responsible
> for the parking violation.
>
> 'For the reasons indicated, we are forced
> to strike down as unconstitutional
> that portion of the second sentence of
> Sec. 21-66.180 (Livingston ordinance
> subsection (b) ) preceding the proviso for
> it deprives an automobile owner of due
> process of law.
>
> "We then interpret the remainder of
> Sec. 21.66.180 (Livingston ordinance
> 28-264, subsection (a) ), as do the
> authorities heretofore cited, to establish
> only a prima facie responsibility upon the
> registered owner, which he has the right
> to rebut, if he can. This in nowise
> interrupts the city's exercise of its police
> power or its right and power to enforce its
> parking ordinances.'" (emphasis added in
> original) 410 P.2d 583. (Parenthesis
> material added in original.)

It is interesting to note that in the second City of Seattle v. Stone case, when the conclusive presumption was

-15-

removed, there was a short decision, 71 Wash.2d 905, 426 P.2d 604, 605, and affirmed the conviction when the owner of the vehicle did not come forward to rebut the prima facie case established by the ownership of the vehicle.

Looking at other jurisdictions, the courts there have discussed the problems that exist if the majority opinion is followed to its logical conclusion in that the municipalities are really offered no alternative when a parking violation occurs. Therefore, the practical aspect would require the cities to place a large number of policemen at all cars so that the offender can be apprehended when he returns to the vehicle or in the alternative to remove the vehicles and charge large storage and removal fees etc. which will undoubtedly cause the citizens to rise up in arms.

The State of Illinois addressed this problem in the City of Chicago v. Hertz Commercial Lease Corp., 375 N.E.2d 1285 (cert. denied by the U. S. Supreme Court). The Illinois Supreme Court discusses virtually all of the aspects of the law regarding parking ordinances.

> "Parking ordinances similar to, and almost identical to, the above cited ordinance have been examined by courts throughout the country over the past 50 years. The controversy almost invariably emerges as a concerted attempt by the courts to discern the intention of the local authority in regulating parking. Some local authorities seek to impose liability ultimately on the driver and do so by summoning the registered owner to court, at which time the owner is presumed to have parked the vehicle. The owner may successfully rebut this presumption, in which case the local authorities are thrust into the dilemma of either securing personal jurisdiction over the driver, or dismissing the case. Other local authorities seek to impose liability directly on the registered owner, in which case the owner is held vicariously responsible for the violation. In either case, the person subject to the penalty is strictly liable, in the legal sense that the owner or driver need not have intended to commit the offense to be responsible for the violation.
> "  . . .

-16-

"The defendants vigorously argue that the plain meaning of the words 'prima facie responsible' in the Chicago ordinance indicates that it was the municipality's clear intention to allow the registered owner to rebut the presumption that the vehicle was parked by the owner. The issue cannot be so facilely resolved. The words 'prima facie' mean nothing more than 'at first sight' or 'so far as can be judged from the first disclosure' or 'presumably' or 'without more.' (Black's Law Dictionary 1353 (4th ed. 1957); Iowa City v. Nolan (Iowa 1976) 239 N.W.2d 102, 105.) In its statutory context, the words 'prima facie' mean that the City has established its case against the registered owner by proving (1) the existence of an illegally parked vehicle, and (2) registration of that vehicle in the name of the defendant. Such proof constitutes a prima facie case against the defendant owner. There is no indication in the ordinance that the owner, to be presumed responsible for the violation, must be presumed to have been the person who parked the vehicle. In practice, the defendant, to absolve himself of responsibility, may show that the vehicle was not parked illegally or that he was not the registered owner of the vehicle at the time of the alleged violation. The defenses are limited, but the plain meaning of the ordinance admits of no more.

"A predecessor of the ordinance in question provided:

"'Whenever any vehicle shall have been parked in violation of any of the provisions of this chapter prohibiting or restricting parking, the person in whose name such vehicle is registered shall be subject to the penalty for such violation.' (Chicago Municipal Code, ch. 27, sec. 34.1.)

"This unambiguous language imposes both strict and vicarious liability on the owner whenever his vehicle is illegally parked, irrespective of whether the owner was the person who parked the vehicle.

"The defendants assert that, because the present ordinance added the words 'prima facie responsible for such violation,' the City deliberately chose to incorporate into the ordinance the presumption that proof of ownership is prima facie evidence that the vehicle was parked by the owner. We interpret the development of the ordinance differently." 375 N.E.2d at 1288. (emphasis supplied.)

You will note in the Chicago ordinance the words "prima facie" as appears in the Missoula ordinance. The Illinois court went on to state in the City of Chicago case the additional language:

"We are in accord with the results reached by the supreme courts of Ohio, Missouri and Iowa. We believe that the City intended, under both the previous and the present ordinances, to

-17-

subject the owner of an illegally parked vehicle to the penalty for such parking violation. The incorporation of the words 'prima facie responsible' merely clarified that the defendant is not conclusively subject to penalty once the City establishes its prima facie case of a violation and ownership, but that he can come forward with evidence controverting either element of the case against him. . .

". . .

"An irrebuttable presumption may be a constitutional denial of due process if it deprives a party of the opportunity to prove the non-existence of an essential element of the substantive offense. The defendants' position assumes that an essential element of the ordinance is the presumption that the owner was the person who parked the vehicle. As we have previously stated, the ordinance does not purport to incorporate that presumption into the substantive offense. The two elements of the substantive offense are rebuttable by a showing that a violation was not committed or that the defendant was not the owner at the time of the violation. The constitutional requirement of procedural due process is satisfied because the defendant is not precluded from rebutting either element of the substantive offense." 375 N.E.2d 1288-1291.

There are similar holdings by other courts, for instance Iowa City v. Nolan, 239 N.W.2d, 102, wherein the ordinance held that illegally parked automobiles was a violation "... if the identity of the owner cannot be determined, the owner or person or corporation in whose names the vehicle is registered shall be prima facie responsible for said violation." The Iowa court said on page 105 as follows:

"In this appeal the ordinances before us are clearly within a permissible area of regulation in the interest of people's lives and property. The tragic statistics have been so well promulgated as to be within the ordinary person's general knowledge. About 50,000 lives are lost annually through traffic accidents. A vastly greater number of persons are injured and crippled. Certainly an illegally parked vehicle on a downtown street during rush hour can seriously endanger pedestrian and vehicular travel.

Under the rationale of the above authorities, a registered owner may be vicariously liable for his illegally parked vehicle and subject to punishment pursuant to a public welfare regulation. Whether he may be subjected to imprisonment is not before us now."

The court then added:

> "Under this public welfare doctrine, it is
> clear section 6.54.1 may impose prima facie
> strict criminal responsibility upon the
> registered owner of an illegally parked vehicle.
> By proving (1) the existence of an illegally
> parked vehicle, (2) registered in the name of
> the defendant, and (3) inability to determine
> the actual operator, the city can make out a
> prima facie case for imposing responsibility for
> the violation upon the vehicle's owner. Under
> prior authority of this court and others, this
> 'prima facie' responsibility means 'at first
> view' or 'on its face' or 'without more',
> State v. Richards, 126 Iowa 497, 502, 102 N.W.2d
> 439, 441, the proof of ownership is sufficient
> to create a jury question on defendant's respon-
> sibility for the violation. Commonwealth v.
> Pauley, Mass., 331 N.E.2d 901, 905. This proof
> would also be sufficient to convict defendant
> unless the evidence indicated defendant was not in
> fact responsible for the violation. This permits
> defendant to come forward with evidence that
> someone was operating the vehicle without his
> consent or with other facts which would rebut the
> prima facie inference that the registered owner
> of a vehicle is responsible for its operation.
> In the area of public welfare offenses, such
> burden shifting is not constitutionally infirm.
> See U.S. v. Park, supra, 421 U.S. at 672, 95
> S.Ct. at 1912, 44 L.Ed.2d at 501."

Also see City of Kansas City v. Hertz Corp. 499 S.W.2d
449, wherein the Missouri Supreme Court upheld a prima facie
responsibility comparable to that of the Missoula ordinance. Also
see Commonwealth v. Minicost Car Rental, Inc. (1968) 242 N.E.2d 411 and
the City of St. Louis v. Cook, 221 S.W.2d 468.

In other words, practically all of the courts are unanimous
and hold that if it is merely a prima facie establishment of liability
that can be rebutted there is no unconstitutional shifting of burden
in a case such as this.

The legislature, under provisions of Section 45-2-302(2),
MCA, provided as follows:

> "A person is legally accountable for the conduct
> of another when:
>
> (2) the statute defining the offense makes him
> so accountable;"

Using the rationale of the above cases this should be
sufficient to affirm the trial court's findings.

However, in Montana we have an additional reason why the District Court's decision should be upheld. A search of the record fails to justify the statement of the court that in a parking violation that there could be a penalty in excess of the $500.00 fine authorized by Section 45-2-104, MCA. There is a specific fine of a maximum of $50.00 because the specific fine set forth in the parking ordinance takes precedence over the general ordinance penalties of Missoula and set forth in Section 20-2 of the Missoula City Code. Section 20-2 is not a portion of the parking ordinance and this is gratuitously thrown in to reverse the trial court. This court has repeatedly held that the specific controls over the general as stated in the State Consumer Counsel v. Montana Department of Public Service Regulation, 181 Mont. 225, 593 P. 2d 34, 36 (1979), State v. Holt, 121 Mont. 459, 194 P. 2d 651, and In Re Wilson's Estate, 102 Mont. 178,56 P.2d 733 (1936).

The majority opinion holds that both vicarious liability and absolute liability are constitutional in Montana if the penalty does not exceed $500.00. Section 45-2-302(2) and 45-2-104, MCA. This is exactly what Section 20-118 of the Missoula City Code does. It states:

> "Every person in whose name a vehicle is
> registered or licensed shall be responsible
> for any parking of the vehicle in violation
> of this division."

This sentence was declared constitutional in State v. Jetty, supra, and clearly establishes vicarious liability on the owner. Because the Missoula City Code does not impose a penalty that exceeds Section 45-2-104, MCA, this Court should affirm the conviction of petitioner under the rational of City of Chigago v. Hertz, supra, Section 45-2-302(2) and 45-2-104, MCA, and Missoula City Ordinances 20-118 and 20-184.

On the question of graduated fines, it is my contention that this is within the power of police regulations of a municipality

and one that the courts should not interfere with so long as they are reasonable. It is obvious that if a person pays his fine without any additional actions by the municipality that a fine of $1.00 is reasonable. However, if it is necessary to send out notices and do additional bookkeeping because the person has not paid his fine, the expense to the city is greater and the violator should pay these costs. Under the exhibits introduced by the appellant, the maximum fine is $50.00 in any instance, which clearly is less than the prohibitions of Section 45-2-104, MCA. Considering all of the above I would affirm the District Court's decision and impose the fine.

_____
JOSEPH B. GARY, District Judge, sitting in place of Mr. Justice Daniel J. Shea

JOHN M. McCARVEL, District Judge, sitting in place of Chief Justice Frank I. Haswell, concurring in Judge Joseph B. Gary's dissent:

The Defendant relies on two United States Supreme Court decisions, Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and In Re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.E.2d 368. These cases have no relevance to the misdemeanor defense of illegal parking. In Sandstrom the Supreme Court clearly defined what element was involved in that case.

> "The question presented is whether, in a case in which intent is an element of the crime charged, the jury instruction 'the law presumes that a person intends the ordinary consequences of his voluntary acts,' violates the Fourteenth Amendment's requirements that the State prove every element of a criminal offense beyond a reasonable doubt." 99 S.Ct. at 2453.

Those cases refer to the specific intent offenses. Intent is not an element of the offense charged in this case.

_____
JOHN M. McCARVEL, District Judge, sitting in place of Chief Justice Frank I. Haswell

-21-